# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, *as subrogee of*
*Sonja Paula Peterson*,

        Plaintiff,

    v.

UNITED STATES OF AMERICA,

        Defendant.

Case No. 16-CV-897 (JNE/BRT)
**MEMORANDUM**
**(FILED UNDER SEAL)**

SONJA PAULA PETERSON,

        Plaintiff,

    v.

UNITED STATES OF AMERICA,

        Defendant.

Plaintiffs State Farm Mutual Automobile Insurance Company ("State Farm") and Sonja

Paula Peterson brought Federal Tort Claims Act ("FTCA") actions against the Government for

property damage and personal injuries arising from a car accident involving a Federal Bureau of

Investigation ("FBI") agent. This consolidated action is before the Court on the Government's

Motion to Dismiss under Fed. R. Civ. P. 12(h)(3). (*See* Dkt. No. 19.) The Court grants the

Government's Motion because the "discretionary function" exception to the FTCA's waiver of

sovereign immunity applies, depriving the Court of subject-matter jurisdiction.

## I.  BACKGROUND

On October 30, 2012, FBI agent Gregg Merkel drove South on Bishop Avenue in Inver

Grove Heights, MN. (*See* Peterson Amend. Compl. ¶¶ 7-8.)[1] Merkel was in pursuit of a subject

---

[1] The Peterson Amended Complaint is located at Dkt. No. 7 in No. 16-CV-1019 (JNE/BRT).

of surveillance and was the "primary eye" on the subject—that is, he was the closest tail on the subject. (*See* Declaration of Gregg E. Merkel ("Merkel Decl.") ¶¶ 2-4, Ex. A, Dkt. Nos. 22, 22-1.)[2] The subject drove through a red light at the intersection of Bishop Avenue and Upper 55th Street. (*See id.* ¶ 7, Ex. A.) After crossing, the subject proceeded South onto an entrance ramp to U.S. Highway 52. (*See id.* Ex. A.)

Merkel stated in his accident report that he stopped at the red light and activated his "wig wag lights"[3] at the front and rear of his vehicle. (*See id.* ¶ 8, Ex. A.) He drove forward against the red light. (*See id.*) Partway through, Merkel's vehicle was struck by Peterson's vehicle, which was traveling East on Upper 55th Street. (Peterson Amend. Compl. ¶ 8.) Peterson sustained several injuries, and her vehicle was damaged. (*See id.* at ¶ 11; State Farm Compl. ¶ V, Dkt. No. 1.) Both State Farm and Peterson filed administrative claims with the Government, which the Government denied on December 7, 2015. (*See* State Farm Compl. ¶ II; Peterson Compl. ¶ 3.)

## II.  DISCRETIONARY FUNCTION EXCEPTION

The sole issue before the Court is whether the discretionary function exception to the FTCA's waiver of sovereign immunity applies. If this exception applies, the Court lacks subject-matter jurisdiction to hear this case because the Government is otherwise immune from suit as sovereign. *See Compart's Boar Store, Inc. v. United States*, 829 F.3d 600, 604 (8th Cir. 2016). The discretionary function exception is codified at 28 U.S.C. § 2680(a) and provides that the

---

[2] The Court may consider undisputed facts when ascertaining jurisdiction. *See Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008). The facts in Merkel's Declaration and recited in this Memorandum are largely undisputed. The disputed facts do not affect the Court's conclusions.

[3] "Wig wag" refers to a device that flashes left and right headlights alternately. *See Devenpeck v. Alford*, 543 U.S. 146, 148 (2004). It appears that Merkel's vehicle had separate emergency lights that functioned like wig wag lights. (*See* Merkel Decl. Ex. A at 1.) The parties dispute whether Merkel activated his wig wag lights, but as explained herein, that dispute does not affect the Court's conclusions.

FTCA's waiver of sovereign immunity does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

"[T]he basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense* (*Varig Airlines*), 467 U.S. 797, 813 (1984). Courts employ a two-part test: First, the Court determines whether the suit concerns actions that were discretionary in nature because they involved an element of judgment or choice. *United States v. Gaubert*, 499 U.S. 315, 322 (1991). Second, the Court must determine whether the challenged actions were "based on considerations of public policy." *Id.* at 322-23 (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 537 (1988)). If the Court finds both prongs are met, then the exception applies, and the Court lacks subject-matter jurisdiction.

### A.  Whether the Challenged Actions Were Discretionary in Nature

If a "federal statute, regulation, or policy specifically prescribe[d] a course of action," then the actor had no choice, and the discretionary function exception does not apply. *Berkovitz*, 486 U.S. at 536. On the other hand, an action was discretionary in nature if the policy guiding the action used permissive language or called for the exercise of judgment. *See Gaubert*, 499 U.S. at 324; *Compart's Boar Store*, 829 F.3d at 605; *Metter v. United States*, 785 F.3d 1227, 1231 (8th Cir. 2015).

The Government argues that FBI policy gave Merkel the choice to continue surveillance by running the red light. (Defendant's Memorandum in Support of Its Motion to Dismiss ("Def.

3

Br.") 11-15, Dkt. No. 21.) Specifically, the Government points to the FBI's Ground Surveillance

Policy Implementation Guide ("GS-PIG"), which came into effect prior to the accident and

regulates "pursuit driving." (*See id.*) The Government argues that the policy gives pursuit drivers

discretion because it contains permissive language, such as the words "should" and "may."

(Defendant's Reply Memorandum ("Def. Reply Br.") 2-3, Dkt. No. 32.) Plaintiffs argue that the

policy places limits on an agent's discretion because it directs that agents should not take

unnecessary risks. (Plaintiff's Response Memorandum in Opposition ("Pl. Br.") 6, Dkt. No. 27.)

The challenged actions in this case concern the warning system Merkel used (if any) and

the dangerous driving maneuvers he employed. The GS-PIG provides guidance for both of these

actions. The policy does not dictate what systems or maneuvers agents must employ during

pursuit driving. Instead, it authorizes agents to exercise judgment in deciding how to respond to

dangerous scenarios. For example, the GS-PIG allows drivers to determine when emergency

lights and sirens are necessary and which warning systems "will not compromise . . . discrete

surveillance." (*See* Dkt. No. 22-2 at 10-11.) Under the policy, agents must consider factors

before initiating dangerous driving maneuvers. (*See id.* at 11.) Pursuit driving must terminate

"[i]f, in the judgment of the driver or supervisor, the potential risks outweigh the benefits to be

derived from continued pursuit." (*Id.*) However, "[n]otwithstanding [the determination that

pursuit driving is necessary], surveillance personnel should not take unnecessary risks." (*Id.*)

These provisions and others show that the GS-PIG gives agents considerable discretion to decide

what warning systems and maneuvers to employ while pursuit driving. Because Merkel acted

pursuant to a policy that allowed and required him to exercise judgment, the challenged actions

in this case were discretionary in nature. *See Flax v. United States*, 847 F. Supp. 1183, 1190

4

(D.N.J. 1994) ("[T]he very nature of close surveillance suggests that the investigating agent must be afforded a significant level of discretion as to how the [surveillance] will be conducted.").

Plaintiffs cite witness accounts to support their assertion that Merkel did not actually use safety precautions when he entered the intersection. (*See* Pl. Br. 6-7.) Therefore, they argue, he took an unnecessary risk, in violation of the policy. (*See id.*) Whether Merkel did or did not employ wig wags when entering the intersection is irrelevant for two reasons. First, the exception applies "whether or not the discretion involved [was] abused." 28 U.S.C. § 2680(a). Second, the GS-PIG does not require the use of safety precautions in all circumstances, but instead gives agents the discretion to decide when and what precautions are necessary.

### B.  Whether the Challenged Actions Were Based on Considerations of Public Policy

If the challenged actions were discretionary in nature, "it must be presumed that the [actions were also] grounded in policy." *United States v. Gaubert*, 499 U.S. 315, 324 (1991). It is the plaintiff's burden to rebut the presumption that the challenged actions were based on considerations of public policy, or "susceptible to policy analysis." *See id.*; *Compart's Boar Store, Inc. v. United States*, 829 F.3d 600, 605 (8th Cir. 2016). This may be shown if the relevant government policy required a federal employee to balance competing interests before taking the challenged actions. *See Herden v. United States*, 726 F.3d 1042, 1050 (8th Cir. 2013).

The Government argues that Merkel's actions were susceptible to policy analysis because the GS-PIG requires agents to balance multiple factors when confronted with dangerous pursuit driving scenarios. (*See* Def. Br. 17-19.) Plaintiffs argue that the Supreme Court has held that driving decisions are not grounded in policy, citing *Gaubert*. (*See* Pl. Br. 7.) The Supreme Court stated in a footnote:

> There are obviously discretionary acts performed by a Government agent that are
> . . . not within the discretionary function exception because these acts cannot be

5

said to be based on the purposes that the regulatory regime seeks to accomplish. If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.

*Gaubert*, 499 U.S. at 325 n.7. This hypothetical involves a car accident that occurs while an agent travels to complete duties relating to the supervision of a federal savings and loan association. *See id.* at 329-34. In these circumstances, the driving decisions would not be "grounded in regulatory policy" because such decisions would not implicate the social, economic, or political policies underlying federal savings and loan association regulations—as compared to supervisory decisions taken pursuant to that "regulatory regime." *Id.*

Pursuit driving involves balancing competing concerns that are grounded in considerations of public policy. The GS-PIG requires, among other things, that agents engage in a risk-benefit analysis that factors in "[t]he seriousness of the offense under investigation including whether the suspect has threatened the life or safety of others or poses a risk to the community in the event of escape" and "[v]ariables such as the weather, road conditions, performance capabilities of the vehicles involved, time of day, and the presence of pedestrians and other traffic." (Dkt. No. 22-2 at 11.) The FBI recognizes that under certain conditions, the rules of the road give way to the exigencies of surveillance. Ordinarily, driving standards are not to be disregarded under the policy, but such standards may be set aside if necessary to accomplish an overriding law enforcement purpose. (*See id.* at 11-12.) Therefore, like other law enforcement actions (and unlike travel driving), Merkel's actions were susceptible to policy analysis. *See Hart v. United States*, 630 F.3d 1085, 1090-91 (8th Cir. 2011); *Suter v. United States*, 441 F.3d 306, 311-12 (4th Cir. 2006); *Ga. Cas. & Sur. Co. v. United States*, 823 F.2d 260, 263 (8th Cir. 1987); *Flax v. United States*, 847 F. Supp. 1183, 1190 (D.N.J. 1994).

6

Plaintiffs argue that Merkel did not mention any policy considerations in his accident report and therefore must not have made any. (*See* Pl. Br. 7-8.) But whether Merkel actually balanced any policy considerations is irrelevant because "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325; *see Metter v. United States*, 785 F.3d 1227, 1233 (8th Cir. 2015) (holding that whether the defendant made a "conscious decision regarding policy factors" has no bearing on whether the decision was susceptible to policy analysis (quoting *Kiehn v. United States*, 984 F.2d 1100, 1105 (10th Cir. 1993))).

Plaintiffs have not carried their burden of rebutting the presumption that Merkel's actions "involved the exercise of discretion in furtherance of public policy goals." *Gaubert*, 499 U.S. at 334. Because both parts of the discretionary function exception test are met, the exception applies, and the case must be dismissed without prejudice for lack of subject-matter jurisdiction. *See Hart*, 630 F.3d at 1091.

### III. CONCLUSION

The Court grants Defendant United States of America's Motion to Dismiss. (*See* Dkt. No. 19.) The Court will issue an order that is consistent with this Memorandum.

Dated: April 6, 2017.

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge